# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARTHUR SEYMORE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JEH CHARLES JOHNSON, ) <br> Secretary, Department of Homeland Security, ) <br> ) <br> Defendant. ) | Case No. 14-cv-12324-DPW |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

**Introduction**

Arthur Seymore ("Seymore" or "Plaintiff"), a current employee of the Transportation Security Administration ("TSA"), alleges that in 2010, he was not paid overtime in accordance with his hours worked and that, in late 2013, he was put on a leave restriction. The underpayment claim is allegedly discriminatory, while the leave restriction is allegedly discriminatory and retaliatory. With these personnel decisions as background, Seymore sues under several theories. As mentioned, the pay claim and leave restriction claim invoke Title VII, but, according to Seymore, they also reflect a host of additional unlawful acts, including: (i) violation of the Fifth Amendment's guarantee of due process; (ii) breaches of contract and the covenant of good faith and fair dealing; (iii) negligent infliction of emotional distress; and (iv) intentional infliction of emotional distress.

Seymore's Complaint should be dismissed in its entirety for failure to state a claim. As discussed below, his initial EEO contact regarding his overtime pay allegations was untimely, and must be dismissed. Seymore fails to fully allege that his leave restriction was either

retaliatory or discriminatory, so that claim must be dismissed. Seymore's allegations about his inability to get the traction he desires with his EEO complaint do not implicate the Fifth Amendment, so that claim must be dismissed. Finally, his breach claims are not sufficiently pled to show jurisdiction in this court, and his emotional distress claims are preempted by the Federal Employees' Compensation Act, so they must be dismissed.

## I. Background

TSA hired Seymore in January 2010, as a part-time Transportation Security Officer ("TSO"); his duty station was Provincetown Municipal Airport ("PVC"). Complaint, ¶¶ 5, 6. PVC was at that time and continues to be a small, regional, and seasonal airport; TSA stations seven full-time and one part-time employees there to conduct security screening operations. Complaint, ¶¶ 9, 15. The basic work week of a part-time TSO hired after April 2, 2007, as Seymore was, is "between 16 and 25 hours per week and not more than six consecutive days." Complaint, ¶ 7 and Ex. B. Seymore was eligible to receive overtime pay.

"During Pay Periods 4 through 21 of 2010, Plaintiff, a new hire part-time employee, was forced to work over eighty hours per pay period, and sometimes upwards of one hundred twenty hours per pay period." Complaint, ¶ 18. Seymore alleges that he "did not receive adequate overtime compensation" for that work. Id. In addition, Seymore alleges that he was entitled to have his part-time status converted to full-time. Complaint, ¶ 19.

Seymore alleges he was not aware of the form he needed to submit to receive overtime pay, nor was he aware of his entitlement to overtime pay, until 2012, after he was transferred from PVC to Hyannis Airport. Complaint, ¶ 20. Once on notice, Seymore "moved to amend [his pending EEO matter] to include this lack of overtime payment" within 14 days. Complaint, ¶ 21. Seymore was instructed by an Administrative Judge to pursue the overtime issue

separately, which Seymore did by making informal EEO contact in November 2012. Ultimately, the overtime pay issue was pursued through a formal EEO complaint, investigation, and litigation stages, but was dismissed on the basis that Seymore's contact with the EEO was untimely. Complaint, ¶ 28. The Department of Homeland Security issued its Final Agency Decision implementing the dismissal on March 7, 2014. Complaint, ¶ 30.

Seymore was placed on a leave restriction, due to excessive use of sick leave, on October 6, 2013, while his EEO matters were being litigated. According to the Complaint, Seymore's supervisor believed he called out sick twice in 2012, and five times in 2013, and that "seven sick days over an eleven month period is excessive and showed a habitual pattern of leave abuse." Complaint, ¶33. Seymore disagrees; he alleges that he called out sick once without incident, then the report of investigation regarding his existing EEO matter issued, then he called out sick again and was approved to take leave, but was eventually "required to report to a meeting with [his supervisor] Ms. Wainscott regarding a supposed abuse of leave." Complaint, ¶ 38. Seymore also alleges that a "white co-worker with similar time in service as Plaintiff" "was not on leave restriction [and] had not been counseled about his leave usage." Complaint, ¶ 37.

Seymore contacted Ron Niemann with TSA's Civil Rights Division's ("CRD") EEO Formal Complaints Section on October 11, 2013, to amend his existing EEO action to include allegations regarding this leave restriction. Complaint, ¶¶ 40, 70. On January 3, 2014, TSA responded that Seymore's prior EEO action could not be amended because the investigation had closed and he had requested a hearing, putting that matter in the exclusive jurisdiction of an Administrative Judge. Complaint, ¶ 71. Seymore submitted a completed Individual Complaint of Employment Discrimination to CRD on or about January 28, 2014, Complaint, ¶ 42, and is

apparently pursuing his leave restriction claim through the administrative process, Complaint, ¶¶ 45 – 55.

Seymore now sues under a number of theories:

- He alleges that his failure to receive proper overtime pay in 2010 was discriminatory based on his race (First Cause of Action);

- He alleges that the October 2013 leave restriction was retaliatory, and he alludes that it was also discriminatory (Second Cause of Action);

- He alleges that when he attempted to contact TSA's CRD after he was placed on the leave restriction, CRD mishandled his EEO complaint, which denies him due process under the Fifth Amendment (Third Cause of Action);

- He characterizes his failure to receive correct overtime compensation in 2010 as a violation of his employment contract and thereby alleges both breach of contract and breach of the covenants of good faith and fair dealing (Fourth and Fifth Causes of Action); and

- He generically alleges that he "had to seek medical support due to the emotional distress caused by TSA's actions and inactions," which constitutes both negligent and intentional infliction of emotional distress (Sixth and Seventh Causes of Action).

## II. Legal Standards

In considering a motion under Rule 12, the Court must "accept well-pleaded facts as true and draw all reasonable inferences from those facts in favor of the plaintiff." Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998).

### A. Rule 12(b)(1)

Courts cannot adjudicate matters in which they lack subject matter jurisdiction. Although a court must "construe the Complaint liberally," "unsupported conclusions or interpretations of law" will not suffice to show subject matter jurisdiction. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

### B. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss evaluates the viability of a plaintiff's legal theory in light of the facts pled.

If a plaintiff presents sufficient factual allegations that, when taken as true, demonstrate a plausible claim for relief, then the complaint will survive a Rule 12(b)(6) motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-556 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Alternatively, "[d]ismissal for failure to state a claim is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citing Centro Medical del Terabo, Inc. v. Feleciano de Melecia, 406 F.3d 1, 6 (1st Cir. 2005)). Similarly, a court is not obligated to accept, and indeed may disregard, "bald assertions [and] unsupportable conclusions." In re: Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008) (citing Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 4 (1st Cir. 2007)). Allegations that simply recite legal buzz words and conclusions

or merely rehash the elements of a claim will be ignored. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

**III.    Argument**

**A.  The overtime payment claim must be dismissed for failure to state a claim.**

Seymore fails to state a discrimination claim regarding his lack of overtime pay for two reasons: first, he failed to timely initiate the EEO process with respect to that allegation; and second, his Complaint is devoid of either direct or circumstantial indicia of discrimination.

      **1.  Untimely EEO contact**

Seymore alleges that, in 2010, he would complete a "daily sign in sheet" when he arrived at his duty station for his shift and would "immediately have it initialed by his supervisor." Complaint, ¶ 13. Seymore and his supervisor "would meet every other Monday to review [his] Time and Attendance Reports." Complaint, ¶ 14. Bi-weekly Time and Attendance Reports would be processed by payroll. See id. Despite Seymore's allegation of daily and biweekly attention to his time and attendance, he alleges that for pay periods four through 21 of 2010, he "did not receive adequate overtime compensation." Complaint, ¶ 18. Again, despite Seymore's daily and biweekly attention to his time and attendance sheets, Seymore alleges that he was not aware of the payment error until March 25, 2012, after he had transferred to a different duty station, and even then, he was only made aware of the error because his new supervisor "informed [him] that in order to receive payment for overtime hours worked, Plaintiff would have to fill out TSA Form 1107." Complaint, ¶ 20. On or about April 11, 2012, Seymore attempted to amend an existing EEO complaint to include the allegation of improper overtime pay — two years after he received pay for those hours worked. Complaint, ¶ 21.

Exhaustion of administrative remedies is a "condition precedent" to filing a Title VII action in district court. Meyer v. Runyon, 869 F. Supp. 70, 76 (D. Mass. 1994). The first requirement in order to properly exhaust a discrimination claim is to make initial EEO contact "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The 45-day reporting requirement is extended if the employee "did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred." 29 C.F.R. 1614.105(a)(2). If initial EEO contact is untimely and there are no grounds upon which to equitably toll the reporting deadline, the claim is barred from further litigation in district court. See Burns v. Potter, 334 F. Supp. 2d 13, 18 (D. Mass. 2004).

Under Title VII, "an unlawful employment practice occurs […] when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid…." 42 U.S.C. § 2000e-5(e)(3). See also National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002) (even after a discriminatory decision is made, "each week's paycheck that delivered less to a black than to a similarly situated white is a wrong actionable under Title VII") (citing Bazemore v. Friday, 478 U.S. 385, 395 (1986)). So, according to Title VII, Seymore was discriminated against at the time he received each paycheck that allegedly underpaid his overtime work.

Seymore's pay claim should be dismissed for untimely initial EEO contact. He made initial EEO contact in 2012 for purported payment deficiencies that occurred, according to his own allegations, only during a portion of 2010. Seymore failed to meet the 45-day reporting requirement in 29 C.F.R. § 1614.105(a), which bars his claim.

Although not clearly stated, Seymore justifies his untimeliness through allegations that he was unaware that he needed to fill out TSA Form 1107 in order to receive payment for overtime

7

hours worked. In other words, Seymore alleges that he could not have known of the pay oversight until 2012, when a different manager at a different duty station made Seymore aware of the need to file TSA Form 1107 in order to receive overtime pay. See Complaint, ¶ 20 ("This was also the first instance when Plaintiff became aware that he had not been properly compensated for the hours he worked."). Once aware, Seymore alleges he made an attempt to amend a pending EEO matter within a month. See Complaint, ¶¶ 20-21. Without so saying, Seymore believes that he is entitled to equitable tolling of the 45-day reporting requirement due to his lack of notice of the pay issue in 2010.

Seymore's effort to excuse his failure to exhaust is unavailing. The First Circuit takes "a narrow view of equitable exceptions to Title VII exhaustion requirements." Frederique-Alexandre v. Dep't of Nat'l & Envtl. Res., 487 F.3d 433, 440 (1st Cir. 2007). Equitable tolling is "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." Salois v. Dime Sav. Bank, 128 F.3d 20, 25 (1st Cir. 1997) (citations and internal quotations omitted). The plaintiff bears the burden of making an affirmative showing that he is entitled to equitable relief. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151-2 (1984); Rivera-Gomez v. de Castro, 900 F.2d 1, 3 (1st Cir. 1990).

In order to be entitled to equitable tolling of the 45-day reporting requirement, Seymore would have had to be unaware that his pay was miscalculated at the time he was receiving his paychecks. Not only is this rather unbelievable on a practical level, it fails create a plausible legal theory for equitable tolling, because equitable tolling is not available to save inattentive plaintiffs. See Benitez-Pons v. Com. of Puerto Rico, 136 F.3d 54, 61 (1st Cir. 1998) (citation omitted) ("[e]quitable tolling is unavailable where a party fails to exercise reasonable diligence"). Nor has Seymore pled that any act on Defendant's part caused him to fail to notice

his miscalculated pay or prevent him from exercising his rights for nearly two years. See Lavery v. Marsh, 918 F.2d 1022, 1028 (1st Cir. 1990) (defendant must engage in "affirmative misconduct" to warrant equitable tolling in plaintiff's favor). Although Defendant does not agree with the underpayment allegation, it argues that the time for making such an allegation has long passed and should have been made, at the latest, within 45 days of the last paycheck received in 2010 that Seymore believes was incorrect. Seymore's notice of the underpayment was receipt of his pay at the time he was paid; it was not information received two years later that in order to receive overtime pay, he needed to complete TSA Form 1107.

Because Seymore failed to make timely EEO contact about his overtime pay and is not entitled to equitable tolling, this count must be dismissed.

### 2. Failure to state a claim

Even if the Court were to find that Seymore was not on notice of the allegedly discriminatory pay until 2012, and therefore the 45-day reporting requirement were equitably tolled, making his initial EEO contact timely, he still fails to state a discrimination claim regarding his overtime pay.

Seymore provides Defendant and the Court pages of allegations regarding his work environment at PVC. We learn that Seymore was a part-time employee (Complaint, ¶ 6); that all his supervisors and co-workers were white (Complaint, ¶ 12); that because of the unavailability and eventual departure of a fellow employee, Seymore worked more than his part-time position permitted (Complaint, ¶¶ 15-18); but that Seymore's status was not changed from part-time to full-time (Complaint, ¶ 19). We also learn about Seymore's additional, ongoing EEO activity: he attempted to amend an existing EEO matter when, in 2012, he learned of TSA Form 1107 (Complaint, ¶ 21); that the Administrative Judge refused to allow the amendment (Complaint, ¶

9

23); that Seymore pursued the claim and requested a hearing (Complaint, ¶¶ 24-5); and that the agency moved to dismiss the overtime pay claim, which was granted (Complaint, ¶¶ 27-29).

As discussed above, Seymore specifically alleges that when he worked at PVC in 2010, he worked a majority of the year — "thirty consecutive weeks" — at overtime levels. Complaint, ¶ 19. It was not until he changed duty stations and management, however, that he learned that in order to receive overtime pay, he needed to complete and submit TSA Form 1107. See Complaint, ¶ 20. Notably, Seymore does not allege that the underpayment had anything to do with his race. He merely states that he was the lone African American at his duty station and that at some point he noticed he was incorrectly compensated for the hours he worked.

The Supreme Court "has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 511 (2002). Indeed, a discrimination allegation simply needs to give the defendant "fair notice of the basis" of the claims. Swierkiewicz, 534 U.S. at 514. However, Seymore's Complaint, lengthy and detailed as it is, does not provide fair notice of how discrimination based on his race affected his pay. There's no connection whatsoever between Seymore's allegation of missing pay and his race, beyond that he was the only African American TSA employee at PVC at the time. In fact, there is no allegation that his Caucasian peers were paid "correctly" and he was not. Seymore need not plead with particular specificity, but he must allege that his race had an adverse impact on his pay, and he does not. As a result, his overtime pay claim must be dismissed for failure to state a claim.

**B. The leave restriction claim must be dismissed for failure to state a claim.**

Simply put, retaliation is a form of punishment: an employee engages in activity protected by Title VII, his or her management is made aware of it, and the employee suffers an adverse employment action as a result of engaging in protected activity. See, e.g., Colón v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013) (stating a prima facie case of retaliation is shown by (1) engaging in protected activity by challenging or reporting conduct that violates Title VII; (2) experiencing an adverse employment action; and (3) a causal connection between the two). See also 42 U.S.C. § 2000e-3(a); Collazo v. Bristol-Myers Squibb Mfg., 617 F.3d 39, 48 (1st Cir. 2010). An adverse employment action, in the retaliation context, is something that would dissuade a reasonable employee from pursuing a charge of discrimination under Title VII. See Burlington N. & Santa Fe. Rwy. v. White, 548 U.S. 53, 67-8 (2006). The causal connection demands actual or implied causation, demonstrated either through actions or time; it is insufficient for a plaintiff to merely state that he/she "engaged in a protected activity and then was disciplined." Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006); see also Kosereis v. Rhode Island, 331 F.3d 207, 217 (1st Cir. 2003).

For purposes of this motion, Defendant does not contest that Seymore engaged in EEO activity prior to his placement on leave restriction. However, this concession alone is insufficient to carry Seymore's retaliation claim into discovery.

Seymore has not, and, in fact, cannot allege that the leave restriction was an adverse employment action. As discussed above, an adverse employment action in the retaliation context is a personnel decision that would dissuade a reasonable employee from engaging in activity protected by Title VII. Basic personnel-related communications with employees fall short of that mark, even if they are memorialized in writing, admonish the employee's behavior, or request

11

improvement under threat of future discipline. See Pedicini v. United States, 480 F. Supp. 2d 438, 454 (D. Mass. 2007) ("mere criticism, or counseling, of an employee" does not constitute retaliation) (citation omitted).

Seymore himself alleges that five days after he was placed on the leave restriction, he began to make EEO contact about it in an attempt to amend a preexisting EEO matter to include a retaliation charge. See Complaint, ¶¶ 35, 40. Not only did Seymore attempt to file a charge of retaliation within a week, he doggedly pursued that retaliation allegation for months: via mail in early November 2013 (Complaint, ¶ 41); via mail in January 2014 (Complaint, ¶ 42); through contact in late February 2014 (Complaint, ¶ 45) and emails in late February and early March (Complaint, ¶¶ 46-9). Clearly, Seymore was not dissuaded from engaging the EEO process with respect to his leave restriction.

Separately, Seymore also failed to allege that his manager, Transportation Security Manager ("TSM") Wainscott, was on notice of his prior EEO activity, which is equally fatal to his effort to state a claim. Seymore alleges that, on August 20, 2013, the report of investigation "was issued" and was received on September 4, 2013. See Complaint, ¶ 38. Seymore specifically alleges that, on September 4, 2013, he received TSA's report of investigation into unspecified EEO claims. See Complaint, ¶ 31. But Seymore never alleges that TSM Wainscott received a copy of the report, knew about his protected activity, or was otherwise on notice that he had engaged the EEO process. Seymore is comfortable alleging, "Upon information and belief, the Leave Restriction placed on Plaintiff is entirely for the purpose of retaliation," id., but he never unpacks the allegation beyond this impermissible, the-defendant-unlawfully-harmed-me superficial statement. See Iqbal, 556 U.S. at 678. The Complaint does not indicate that TSM Wainscott knew of Seymore's protected activity and, without an allegation regarding notice,

there can be no causal connection to make the leave restriction retaliatory. For the two reasons stated above, Count II should be dismissed.

Seymore alludes that his leave restriction may have been discriminatory based on his race. Specifically, he alleges that his

> white co-worker with similar time in service as Plaintiff provided Plaintiff with his pay and leave statement up to the time Plaintiff was placed on Leave Restriction. This co-worker had five (5) hours of sick leave balance remaining and 16.50 hours of annual leave remaining, whereas Plaintiff had 188.75 hours of annual leave and 105 hours of sick time remaining; Plaintiff's co-worker was not on leave restriction, had not been counseled about his leave usage, and did not have to report to his duty station thirty minutes early without pay.

Complaint, ¶ 37.

To the extent Seymore insinuates he was placed on leave restriction for racially discriminatory reasons, such a claim must be dismissed. As an initial matter, Seymore does not allege that he exhausted this claim, to the extent he intends to make one, and failure to exhaust is grounds for dismissal. In addition, Seymore does not develop his allegation, instead leaving the parties to speculate the connection between the personnel action, his possible comparator, and the alleged role race played.

The First Circuit asks that plaintiffs compare apples to apples in order to show discrimination through comparator evidence, see Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999), but Seymore only generally alleged that a white employee with similar time in service was not on leave restriction when he was, see Complaint, ¶ 37. This is not an "apples to apples" comparison. An "apples to apples" comparison would explain, at the very least, whether the alleged comparator had been similarly disciplined for alleged abuse of sick leave yet not placed on a leave restriction. Indeed, "[n]o valid comparison can be drawn between two incidents for the purpose of proving disparate treatment if 'differentiating or mitigating

13

circumstances' distinguish either the employee's conduct or the employer's response to it." Id. at 21 (quoting Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)). Without an allegation regarding the comparator's disciplinary status, Seymore simply mentions a white co-worker with a low sick leave balance was not placed on a leave restriction. There is so little information about the racial aspect of his leave restriction (a strange void, considering that Seymore made rapid, repeated contact regarding its alleged retaliatory animus) that it should not be viewed as adequately pled under Twombly, Iqbal, and Gagliardi.

### C. The breach claims must be dismissed.

Seymore's breach claims are rooted in what he believes is his employment contract with TSA. See Complaint, ¶¶ 80-81, 83-85. However, Seymore appends no contract to his Complaint and, in fact, cannot, as none exists. Seymore is a federal employee, and it is "well settled that employment within the federal service system is a product of appointment, not contract." Townsend v. United States, 368 Fed. Appx. 962, 966 (Fed. Cir. 2012). See also Urbina v. United States, 428 F.2d 1280, 1284 (Ct. Cl. 1970) ("[I]t is plain that public employment does not . . . give rise to a contractual relationship in the conventional sense."). Because he has not sufficiently pled (and cannot sufficiently plead) that he is in a contractual relationship with his employer, the federal government, the breach of contract and breach of the implied covenants of good faith and fair dealing claims must be dismissed.

The Court of Federal Claims also has held that, unless a federal employee can rebut the presumption that the employee holds his/her position by appointment, "that employee cannot base his or her claim on an employment contract theory and will thus fail to invoke this Court's subject-matter jurisdiction." Hamlet v. United States, 63 F.3d 1097, 1101-1102 (Fed. Cir. 1995).

14

Seymore's Complaint does not rebut such an assumption but, even if it did, Seymore omits a clear allegation that this Court has jurisdiction over his claims.

It is a settled principle that absent a waiver of sovereign immunity, courts lack jurisdiction over suits against the federal government. See, e.g., Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 287 (1983); Muirhead v. Mecham, 427 F.3d 14, 17 (1st Cir. 2005). Waivers of sovereign immunity must be "unequivocably expressed," United States v. Testan, 424 U.S. 392, 399 (1976), and one clear waiver of sovereign immunity, the Tucker Act, 28 U.S.C. § 1491 et seq., permits certain contract disputes against the federal government, see Charles v. Rice, 28 F.3d 1312, 1321 (1st Cir. 1994).

"The only remedy to which the United States has consented in cases of breach of contract is to the payment of money damages in either the Court of Claims, if the amount claimed is in excess of $10,000, 28 U.S.C. § 1491(a)(1), or the district courts, where the amount in controversy is $10,000 or less." Coggeshall Dev. Corp., v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989). In order for this Court to have jurisdiction over Seymore's breach claims, then, he would have to plead that a breach occurred (which he cannot do, as there is no employment contract) and that the money damages flowing from the breach are less than $10,000 (which he has not done in his vague demand for damages). Without fitting the Tucker Act's limited waiver of sovereign immunity, this court lacks jurisdiction over Seymore's breach claims. They must be dismissed.

**D. Seymore fails to state a Fifth Amendment claim.**

The thrust of Seymore's Fifth Amendment due process claim is that he contacted TSA's Civil Rights and Liberties office on October 11, 2013, did not receive communication from that office until January 3, 2014, refiled a complaint on January 28, 2014, and has not received

15

sufficient attention from the office since then. Complaint, ¶¶ 70-74. He names three TSA employees of that office who have "engaged in purposeful and deliberate actions to prohibit Plaintiff from filing his complaint, asserting his rights and protections, and prejudicing Plaintiff through attempts to make Plaintiff appear to have acted untimely." Complaint, ¶ 75.

It is difficult to imagine how the Fifth Amendment could be violated by federal employees when the EEO regulations, applicable to TSA and other federal agencies, spell out for Seymore the process to which he is entitled and what to do if he doesn't receive it. The EEO regulations found in 29 C.F.R. Part 1614 enumerate in great detail how to pursue an EEO claim, and specifically afford complainants an extension of the 45-day initial contact requirement if "despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2). Seymore, then, does not need to sue TSA employees in their individual capacities to vindicate his EEO rights; he simply needs to continue to contact TSA's Civil Rights Division and pursue his EEO claim.

The First Circuit addressed a similar issue in Francis-Sobel v. Univ. of Maine, 597 F.2d 15 (1st Cir. 1979). This appeal arose from an underlying discrimination (nonselection) action wherein the applicant/plaintiff attempted to engage the EEOC and pursue her rights under Title VII, but, as the First Circuit characterized it, the plaintiff confronted "the agency's less than useful attempts to bestow a benefit provided by Congress." Francis-Sobel, 597 F.2d at 17. Indeed, the First Circuit used stronger language in framing the issue, asking whether "appellee's total disregard of the validity and proper handling of appellant's EEOC complaints gives rise to a Bivens [sic] implied right of action under the *due process clause of the Fifth Amendment*." Id. However, despite its stern characterization of the issue, the First Circuit held that improper EEO adjudication does not violate a plaintiff's Fifth Amendment rights:

16

> [T]his case involves the loss of alleged statutory rights to administrative assistance in the vindication of underlying, fundamental statutory and constitutional interests. The interests themselves have not been lost, only the help that Congress intended charging parties receive in vindicating those rights. We think that such statutory rights, if they be "liberty or property" at all within the meaning of the Due Process Clause, are so tangential to the central thrust of Title VII rights for the deprivation of which Congress Did [sic] provide a remedy that an implied right of action cannot and should not be found here. <u>Indeed, were we to find that the right to EEOC assistance is protected by an implied right of action found in the *Fifth Amendment*, then every federal bureaucrat would be subject to judicial review of the most minute aspects of his responsibilities as they affect members of the public.</u> Such is a task we are neither eager nor constitutionally competent to undertake.

Id. at 18 (emphasis added).

Extending a <u>Bivens</u> remedy here is inappropriate. Seymore's Fifth Amendment claim must be dismissed.

### E. Seymore's tort claims are barred by the Federal Employees' Compensation Act.

Seymore alleges that his employment environment caused him to seek emotional support for emotional distress. If that is the case, which Defendant denies, Seymore's exclusive remedy is the Federal Employees Compensation Act (FECA), 5 U.S.C. §§ 8101 <u>et seq</u>., and the present tort counts must be dismissed.

FECA provides compensation for a federal employee's personal injuries "sustained while in the performance of his duty." 5 U.S.C. § 8102(a). For injuries within its coverage, FECA's remedy is exclusive of any other remedy, including a civil action. <u>See</u> 5 U.S.C. § 8116(c).

> FECA's exclusive liability provision . . . was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise – the "quid pro quo" – commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

Lockheed Aircraft Corp v. United States, 460 U.S. 190, 193-4 (1983). See also Gill v. United States, 471 F.3d 204, 206 (1st Cir. 2006). Without directly holding, the First Circuit recognizes that emotional distress claims are likely covered by FECA. See Gill, 471 F.3d at 208-9. See also Miller v. United States, 1994 U.S. Dist. LEXIS 16019, *6-8 (D.N.H. 1994) (opining, "in light of modern cases holding that emotional distress is presently covered under FECA," that FECA would preempt a Federal Tort Claims Act claim seeking damages for intentional infliction of emotional distress). As a result, Seymore's emotional distress claims are likely preempted by FECA and should be dismissed.

The First Circuit <u>clearly</u> holds that "'the Secretary of Labor shall administer, and decide all questions arising under [FECA]'" in the first instance. Gill, 471 F.3d at 206, citing 5 U.S.C. § 8145. Therefore, to the extent that there is a question of whether FECA preempts Seymore's emotional distress claims, only the Secretary of Labor can opine about its answer. This Court lacks jurisdiction over both the merits of Seymore's tort claims as well as the issue of whether they are covered by FECA in the first instance. Seymore's emotional distress claims must be dismissed for lack of jurisdiction, and must proceed according to the exclusive remedy that FECA provides.

## IV. Conclusion

Seymore's Complaint provides ample information about his workplaces and his EEO endeavors. It does not provide sufficient information to allow his claims to proceed to discovery. Because he fails to allege sufficiently detailed information about the elements of his many claims, the Complaint must be dismissed in its entirety.

Respectfully submitted,

CARMEN M. ORTIZ,
United States Attorney,

By: /s/ Rayford A. Farquhar
Rayford A. Farquhar (BBO # 560350)
Assistant U.S. Attorney
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
rayford.farquhar@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Notice filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney

Dated: March 26, 2015