# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARTHUR SEYMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 14-12324-FDS |
| | ) |
| JEH CHARLES JOHNSON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is a claim of racial discrimination brought by an employee of the Transportation Security Administration. Plaintiff Arthur Seymore has brought suit against defendant Jeh Charles Johnson, Secretary of the Department of Homeland Security, for employment discrimination, unlawful retaliation, violation of due process under the Fifth Amendment, and various state-law claims.

Johnson has filed a motion to dismiss the complaint. For the following reasons, the Court will grant it in part and deny it in part.

**I.     Background**

    **A.     Seymore's Alleged Uncompensated Overtime**

Arthur Seymore is a resident of Massachusetts. He is African-American. (Compl. ¶ 1). He is currently employed by the Transportation Security Administration ("TSA") as a part-time transportation security officer. (*Id.* at ¶ 6).

Jeh Charles Johnson is the Secretary of the Department of Homeland Security. The Transportation Security Administration is an agency within DHS. (*Id.* at ¶ 2).

In January 2010, the TSA hired Seymore as a part-time transportation security officer at the Provincetown (Massachusetts) Municipal Airport. The Provincetown airport is a small, regional airport authorized to employ seven full-time TSA employees and one part-time employee. (*Id.* at ¶¶ 6, 10). A part-time transportation security officer works "between 16 and 25 hours per week and not more than six consecutive days." (*Id.* at ¶ 7). A compressed work schedule for a part-time transportation security officer is "no more than four days per week and no more than 50 hours [per] pay period," and overtime work includes "any work in excess of the [compressed work schedule] for a day (must be more than 8 hours) or a for a week (must be more than 40 hours)." (*Id.* at ¶ 8). A pay period at the TSA is two weeks. In addition, if a part-time security officer works full-time hours for more than two consecutive weeks, his or her status must be changed to full-time. (*Id.* at ¶ 19).

Seymore's supervisor in 2010 was Jacqueline Bizzozero. Bizzozero allegedly initialed his daily time sheet and met with him every other Monday to review his time and attendance reports. (*Id.* at ¶¶ 12, 13). Seymore also regularly worked with full-time transportation security officer Scott Hansson. (*Id.* at ¶ 12). The complaint alleges that during 2010 Seymore was the only part-time employee at the Provincetown airport and the only African-American employee. (*Id.* at ¶ 19).

The complaint alleges that during pay periods 4 through 21 of 2010, Seymore worked more than 80 hours, sometimes upward of 120 hours. He worked full-time hours for 30 consecutive weeks. (*Id.* at ¶¶ 18, 19). It is undisputed that he was eligible to receive overtime

pay.  (*Id.* at ¶ 18).  He contends that he did not receive adequate overtime compensation and that his part-time status should have been changed to full-time.  (*Id.*).

On March 25, 2012, Seymore was transferred to the Hyannis Airport.  According to the complaint, the transfer "was the first time [he] was in a position to perform the time and attendance tasks outside of STSO Bizzozero's supervision."  (*Id.* at ¶ 20).  He contends that after working overtime hours a few weeks later, his new supervisor informed him that to receive overtime pay, he had to fill out TSA Form 1107.  (*Id.*).  According to the complaint, that was the first time Seymore "became aware that he had not been properly compensated for the hours he had worked."  (*Id.*).

### B. The Federal EEO Complaint Process

A federal government employee who believes that he or she has been the victim of unlawful discrimination, and wishes to pursue a complaint, must follow a somewhat different path than a private sector employee.  The first step requires the federal employee to contact an Equal Employment Opportunity counselor at the agency where he or she works.  Generally, the employee must contact the EEO counselor within 45 days of the date the discrimination occurred.  29 C.F.R. § 1614.105(a)(1).

If the matter is not resolved by counseling, mediation, or otherwise at that stage, the employee can file a formal discrimination complaint against the agency with the agency's EEO office.  29 C.F.R. § 1614.105(d).  That complaint must be filed within 15 days after receipt of a notice from the EEO counselor.  *Id.*

Once a formal complaint is filed, the agency will review the complaint and decide whether or not the case should be dismissed for any procedural reason.  29 C.F.R. § 1614.107.  If the agency does not dismiss the complaint, it will conduct an investigation.  29 C.F.R.

§ 1614.108.  The agency has 180 days from the day the complaint was filed to conclude the investigation.  29 C.F.R. § 1614.108(e).  When the investigation is finished, the agency will issue a notice giving the employee two choices:  either request a hearing before an EEOC Administrative Judge or ask the agency to issue a final decision as to whether the alleged discrimination occurred.  29 C.F.R. § 1614.108(f).

A final adverse agency decision can be appealed by the employee to the EEOC.  *Id.*  If the employee requests a hearing, he or she must do so in writing within 30 days from the date of receipt of the notice from the agency about the employee's right to a hearing.  *Id.*  An EEOC Administrative Law Judge will conduct it, make a decision, and order relief if discrimination is found.  29 C.F.R. § 1614.109.

Once the agency receives the Administrative Law Judge's decision, the agency will issue a final order.  29 C.F.R. § 1614.110.  The agency has 40 days to issue the final order.  29 C.F.R. § 1614.110(a).

An adverse decision can be appealed within the EEOC.  *Id.*  An employee can also opt out at various points from the administrative process and file a lawsuit in federal court.  *Id.*

    C.    <u>**Seymore's Complaint Process**</u>

At some point prior to April 2012, Seymore had apparently filed an EEOC complaint, the nature of which is unclear.  (Compl. ¶ 21).  On April 11, 2012, he moved to amend his existing EEOC complaint to include claims for lack of overtime for the periods in 2010.  (*Id.* at ¶ 21).  On October 25, 2012, his motion to amend was denied, and he was advised that he could "begin a new complaint [with an EEO counselor] within fourteen days."  (*Id.* at ¶ 23).  He "immediately began the process" and filed a new complaint with an EEO counselor on November 9, 2012.  (*Id.*

at ¶ 24, Ex. G). He then filed a formal complaint with the EEOC on January 12, 2013. (*Id.* at Ex. L).

On September 4, 2013, Seymore received a report of investigation from the TSA. (*Id.* at ¶¶ 25, 31). The complaint alleges that he then notified the TSA of his request for "a hearing and decision from an EEOC Administrative Judge." (*Id.*). A new ALJ was assigned to his case. (*Id.*).

On September 11, 2013, Seymore requested sick leave; at the time, he had a balance of 105 hours and was allowed thirteen days of leave per year. (*Id.* at ¶¶ 32, 33). His request was approved by his manager, Jennifer Wainscott. (*Id.* at ¶ 32). On September 29, he was allegedly called into a meeting with Ms. Wainscott and was told that "seven sick days over an eleven month period is excessive and showed a habitual pattern of leave abuse." (*Id.* at ¶ 33).

On October 6, 2013, Seymore was placed on leave restriction "due to the supposed habitual pattern of abuse of sick leave." (*Id.* at ¶ 35). The restriction required him to arrive thirty minutes early for each shift without pay. (*Id.*). The complaint alleges that his "white co-worker with similar time in service" had five hours of sick-leave balance compared to Seymore's 105 hours and was not placed on leave restriction or counseled about his use of leave. (*Id.* at ¶ 37). It further alleges that he did not receive any warnings, that the leave restriction violated TSA's policies and procedures, and that it was entirely for the purpose of retaliation for the filing of the new EEOC complaint in November 2012. (*Id.* at ¶¶ 36, 38–39).

On October 11, 2013, Seymore made "a formal request" to amend his existing EEOC complaint to include the alleged claims of retaliation. (*Id.* at ¶ 40). The request was filed with the Chief of the Formal Complaints Section in the EEO Management Branch of the Civil Rights Division. (*Id.*).

On January 3, 2014, Seymore received an e-mail from the TSA EEO Case Manager indicating that his request to amend his complaint had been denied. (*Id.* at ¶ 28, Ex. I). On January 22, 2014, Seymore filed a motion with the EEOC ALJ to amend his formal complaint to include allegations concerning the new retaliatory leave restriction. (*Id.* at ¶ 28, Ex. J).

On January 27, 2014, the ALJ dismissed the EEOC complaint concerning the overtime payments, holding that Seymore should have known of the alleged claim prior to March 25, 2012, and that therefore the complaint was untimely. (*Id.* at ¶ 28, Ex. K).

On January 28, 2014, Seymore completed a "DHS Form 3090-1 'Individual Complaint of Employment Discrimination'" and mailed it to the EEOC. (*Id.* at ¶ 42). The complaint alleges that the form should be filed with the TSA's EEO. (*Id.* at ¶ 44). It also alleges that the EEOC received the complaint on February 4, 2014. (*Id.* at ¶ 42).

The complaint alleges that the TSA EEO should have contacted Seymore within ten days of receipt of the form. (*Id.* at ¶ 44). The complaint further alleges that the EEO purposefully failed to do so in order to delay him from bringing his retaliation complaint and "to make it appear as if [he] made untimely contact." (*Id.* at ¶ 45).

On February 25, 2014, Seymore contacted the TSA Office of Civil Rights and Liberties ("OCRL") to check on the status of his complaint. (*Id.*). The complaint alleges that he was told that EEO had not received his request. (*Id.*) It further alleges that from February 26 to March 2, 2014, Seymore contacted the OCRL five separate times to request information on the status of his complaint, without success. (*Id.* at ¶¶ 46–49).

On March 7, 2014, according to the complaint, the TSA "miraculously located" his DHS Form 3090-1 and the accompanying documents. (*Id.* at ¶ 47).

On April 26, 2014, Seymore received the EEO counselor's report. (*Id.* at ¶ 55). The

6

report stated that he had initiated contact on March 13, 2014, and that initial contact should have occurred by February 3, 2014. (*Id.*). The complaint alleges that Seymore actually initiated contact on January 28, 2014, but did not receive his initial interview until March 13, 2014, due to the "purposeful delays and losing of documents" by the TSA. (*Id.*).

The complaint also alleges that Seymore had to seek, and continues to seek, medical support due to the emotional distress allegedly caused by TSA's actions and inactions. (*Id.* at ¶¶ 87–88, 91–92).

### D. Procedural Background

The complaint in this matter was filed on May 30, 2014. It alleges seven counts: (1) employment discrimination on race in violation of Title VII of The Civil Rights Act of 1964; (2) retaliation in violation of Title VII of The Civil Rights Act of 1964; (3) violation of the Fifth Amendment's protection of due process; (4) breach of employment contract; (5) breach of covenant of good faith and fair dealing; (6) negligent infliction of emotional distress; and (7) intentional infliction of emotional distress. The case was originally assigned to another judge in this district. According to the docket, plaintiff served the summons on the United States Attorney for the District of Massachusetts on June 2 and October 3, 2014. Plaintiff also purported to serve Johnson at the Department of Homeland Security in Washington, D.C. on June 25, 2014. No other action occurred in the matter until March 26, 2015, when Johnson moved to dismiss the entire complaint. On June 9, 2015, the case was reassigned to the undersigned judge.

## II. Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

**III.     Analysis**

    **A.     Count One: Discrimination Claim Regarding Overtime Payment**

Count One alleges that the TSA violated Title VII by forcing Seymore to work overtime without adequate compensation. (Compl. ¶¶ 60–62). Prior to filing a Title VII action in federal court, a party must first exhaust his administrative remedies. *Lebron-Rios v. United States Marshall Serv.*, 341 F.3d 7, 13 (1st Cir. 2003). In order to properly exhaust his administrative remedies, a party "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The 45-day time limit may be equitably tolled when:

> the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her

control from contacting the counselor within the time limits, or for other reasons
considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2). A failure to contact an EEOC counselor within the time limit thus bars the plaintiff from litigating the action unless the party qualifies for equitable tolling. *Farris v. Shinseki*, 660 F.3d 557, 563 (1st Cir. 2011).

Johnson has moved to dismiss the discrimination claim for two reasons. First, he contends that the claim is time-barred because Seymore failed to initiate the administrative process in a timely manner. Second, he contends that Seymore failed to provide direct or circumstantial evidence of discrimination.

It is undisputed that the overtime payments in dispute occurred in 2010 and that Seymore's first contact with the EEOC regarding those payments occurred in 2012. (Compl. ¶¶ 18–20). Thus, unless he qualifies for equitable tolling, his claim is barred by the 45-day filing requirement. *See* 29 C.F.R. § 1614.105(a). In deciding whether a plaintiff is entitled to equitable tolling, the First Circuit takes the "narrow view" that equitable tolling is not intended to protect a plaintiff who failed to exercise due diligence. *Frederique-Alexandre v. Department Nat. Envtl. Res. P.R.*, 478 F.3d 433, 440 (1st Cir. 2007) (quoting *Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 71 (1st Cir. 1982)).

Seymore does not contend that he was "not notified of the time limits or not otherwise aware of them" or that he was "prevented by circumstances beyond [his] control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2). Rather, he appears to contend that "[he] did not know and reasonably should not have been known that the discriminatory matter . . . occurred." *Id.* He contends that he was unaware that he was eligible to receive overtime payments, and that it was not reasonable for him to be aware because he worked erratic hours and always filled out his time and attendance reports with his supervisor, who failed to

9

inform him. He further contends that he never received training or information about payroll procedures.

However, even assuming that Seymore was unaware that he was eligible for overtime payments, he reasonably should have known of his eligibility as soon as he began working extra hours. His offer letter, dated January 12, 2010, indicated that he was a part-time transportation security officer and explained that his compensation was based on the number of hours he worked. (Compl. Ex. A). As soon as Seymore believed that he was required to work more than 80 to 120 hours per pay period, he was put on notice that he might be eligible for additional compensation. Furthermore, the TSA Handbook to Management Directive, which is attached to the complaint, provides clear information concerning eligibility for overtime payments. (Compl. Ex. B). According to the handbook, a compressed work schedule for a part-time transportation security officer is "no more than four days per week and no more than 50 hours per pay period," and overtime work is "deemed not less than two hours in duration for pay of compensatory time off." (*Id.*). The handbook also provides that the TSA must pay overtime to part-time employees who work more than their compressed work schedule, and that overtime work must be documented in writing on TSA Form 1107. (*Id.*). Therefore, under the circumstances, Seymore should have reasonably known that he was likely eligible for overtime pay.

Seymore cites *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), in support of his position that the time period should have been equitably tolled. In *Irwin*, the Supreme Court held that equitable tolling applies when a plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period." 498 U.S. at 96. The application of *Irwin* is generally subject to a five-factor analysis: "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in

pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the filing requirement." *Farris*, 660 F.3d at 564 (quoting *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 (1st Cir. 2005)). [1]

Even under that test, equitable tolling is not appropriate. First, Seymore does not contend that he did not have actual notice or constructive knowledge of the filing requirement. Second, he was not diligent in pursuing his rights because he should have reasonably known of his eligibility for overtime payments. Third, he does not contend that he was ignorant of the filing requirement. There is no evidence of prejudice to defendant, but that fact alone is not sufficient to trigger equitable tolling.

Accordingly, the motion to dismiss will be granted as to Count One, the claim of racial discrimination for failure to make overtime payments.

### B. Count Three: Violation of Fifth Amendment's Right of Due Process

Count Three alleges that various TSA employees violated Seymore's Fifth Amendment right to due process by failing to process his complaint. (Compl. ¶¶ 69–75). It is well-established that the EEOC's failure to process a complaint by a private-sector employee does not violate the employee's due process rights. *See Francis-Sobel v. University of Me.*, 597 F.2d 15, 17 (1st Cir. 1979); *see also Gorczakoski v. EEOC*, 1993 WL 302386, at *2 (1st Cir. Aug. 9, 1993) ("[W]e have held that any mishandling by the EEOC of a Title VII claim does not give

---

[1] *See also Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984). In *Baldwin*, the Court recognized four circumstances in which a Title VII plaintiff may qualify for equitable tolling: (1) the plaintiff "received adequate notice" of the time limits; (2) "a motion for appointment of counsel if pending and equity would justify tolling" the time limits; (3) the court led the plaintiff to believe that he has done everything required of him; or (4) the defendant affirmatively misled the plaintiff into inaction. 466 U.S. at 151. Although Seymore does not cite *Baldwin,* the Court finds that none of the circumstances apply, as Seymore does contend that he did not receive adequate notice; the record does not show that a motion for appointment of counsel was pending; the Court did not lead Seymore to believe he had done everything required of him; and Johnson did not affirmatively mislead Seymore into action.

rise to a *Bivens* implied right of action under the Fifth Amendment."). The First Circuit has noted that even "total disregard of the validity and proper handling of [a plaintiff's] EEOC complaints [do not give] rise to a *Bivens* implied right of action under the due process clause of the Fifth Amendment." *Francis-Sobel*, 597 F.2d at 17.

The Seventh Circuit noted in *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000), that there is "no persuasive reason why . . . a federal employee . . . should be given an implied failure-to-process cause of action under Title VII that has been consistently denied to private plaintiffs." Similarly, there is no reason why a federal employee should have a *Bivens* implied right of action under the Fifth Amendment if a private-sector employee would not be given such a right. Count Three accordingly fails to state a claim upon which relief can be granted.

### C.     Counts Six and Seven:  Negligent and Intentional Infliction of Emotional Distress

Counts Six and Seven allege negligent and intentional infliction of emotional distress. A federal employee's exclusive remedy for work-related injuries is the Federal Employees Compensation Act (FECA). *See* 5 U.S.C. §§ 8101 *et seq.*; *Gill v. United States*, 471 F.3d 204, 206 (1st Cir. 2006). It is well-settled that "federal courts have subject-matter jurisdiction over federal tort claims only when 'it is *certain* that the Secretary [of Labor] would not find coverage under [FECA].'" *Gill*, 471 F.3d at 207 (quoting *Bruni v. United States*, 964 F.2d 76 (1st Cir. 1992)).

Under that standard, Johnson contends that Counts Six and Seven should be dismissed as lacking subject-matter jurisdiction. The Secretary of Labor would likely find coverage under FECA, because Seymore is a federal employee and emotional distress damages are likely available under FECA. *See id.* at 208 ("[The] Secretary of Labor has construed FECA to encompass work-related emotional distress, without regard to physical injury."). Accordingly,

this Court does not have jurisdiction over Seymore's emotional distress claims because it is not certain that the Secretary of Labor would find that FECA denies coverage for such claims. *See id.* at 208. As a result, Counts Six and Seven will be dismissed.

### D. Other Claims

Johnson has also moved to dismiss Counts Two, Four, and Five. Count Two alleges retaliation in violation of Title VII. Johnson contends that it should be dismissed for failure to state a claim because Seymore failed to allege that his Transportation Security Manager was on notice of his prior EEO activity. He further contends that Seymore failed to allege that his leave restriction was an adverse employment action. The count as pleaded appears to state a claim upon which relief can be granted, and defendant's contentions appear to raise factual questions that are more suitable for resolution, at a minimum, on a full factual record. Therefore, the motion to dismiss will be denied as to Count Two.

Counts Four and Five allege breach of contract and breach of the implied covenant of good faith and fair dealing. Johnson contends that they should be dismissed for two reasons. First, Johnson contends that dismissal is proper for failure to state a claim because Seymore has not sufficiently pleaded that he has a contractual agreement with the TSA. Second, Johnson contends that dismissal is proper for lack of subject-matter jurisdiction, because the complaint does not fall within the Tucker Act's limited waiver of sovereign immunity, as the damages flowing from the breach as alleged are not less than $10,000. The complaint properly pleads a claim for implied breach of contract and breach of covenant of good faith and fair dealing, and the counts as pleaded appear to state claims upon which relief can be granted. The complaint also sufficiently pleads that the damages flowing from the breach are less than $10,000, and the

counts as pleaded appear to state claims that fall within this Court's jurisdiction. As a result, the motion to dismiss will be denied as to Counts Four and Five.

## IV. Conclusion

For the reasons stated above, the Court finds that the motion to dismiss is GRANTED as to Counts One, Three, Six, and Seven, and is otherwise DENIED.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor |
|  | F. Dennis Saylor IV |
| Dated: October 23, 2015 | United States District Judge |