UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARTHUR SEYMORE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) 14-12324-FDS |
| JEH CHARLES JOHNSON, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

Plaintiff Arthur Seymore has brought suit against his former employer, defendant Jeh Charles Johnson, Secretary of the Department of Homeland Security. In substance, Seymore contends that defendant retaliated against him for bringing an Equal Employment Opportunity complaint concerning alleged unpaid overtime and discrimination on the basis of race.

Defendant has moved for summary judgment. For the following reasons, the motion will be granted in part and denied in part.

**I. Background**

**A. Factual Background**

The following facts are undisputed.

Plaintiff Arthur Seymore is an African-American man and a former employee of the Transportation Security Administration ("TSA"). (Def. SMF ¶ 1). Defendant Jeh Charles Johnson is the Secretary of the Department of Homeland Security. The TSA is an agency within the Department of Homeland Security.

In January 2010, the TSA hired Seymore as a part-time transportation security officer at the Provincetown Municipal Airport in Massachusetts. (Dow Decl. ¶ 5). In the fall of 2012, Seymore was transferred from the Provincetown Airport to the Logan International Airport in Boston, Massachusetts, and had his status changed from part-time to full-time. (Def. SMF ¶ 6).

In November 2012, Seymore contacted an Equal Employment Opportunity counselor concerning allegedly unpaid overtime. (Compl., Ex. 13). In January 2013, he filed a formal complaint with the Department of Homeland Security alleging that TSA employees at the Provincetown Airport discriminated against him on the basis of race. (*Id.*).

On September 29, 2013, while Seymore's allegations were pending, Transportation Security Manager Jenifer Wainscott called Seymore into her office to discuss his use of sick leave, which she considered inappropriate. (Def. SMF ¶ 9). Thereafter, on October 6, 2013, Wainscott placed Seymore on a leave restriction.

The leave restriction was detailed in a memorandum. (Def. SMF ¶ 10). Under the terms of the memorandum, Seymore was required to request scheduled leave at least seven days in advance, request emergency leave at least an hour before his scheduled report time, and, under some circumstances, provide supporting documentation for his absences. (Dow Decl., Ex. 6). It further provided that "Your work hours are 1215 to 2045. These include a 30-minute lunch break. You are expected to be at work and be ready to begin working at 1145 every day . . ." (*Id.* ¶ 5). The memorandum stated that the restriction would either be reviewed within 180 days or it would lapse. (*Id.* at 2).

On April 21, 2014, Seymore sent an e-mail to TSA Federal Security Director David Kane informing him that he had "been on [leave restriction] reporting to work 30 minutes early without pay since 10/6/2013" and requesting that the restriction be removed. (Balakrishna Decl.,

2

Ex. 3). On April 26, 2014, another TSA employee, Rob Snyder, sent Seymore an e-mail informing him that the leave restriction had expired on April 4, 2014, 180 days after it was issued. (*Id.*). On May 7, 2014, Kane sent Seymore another e-mail, which stated that after an investigation, he determined that the leave restriction "contained a typographical error that directed you to begin working at 1145 everyday rather than your regularly scheduled start time of 1215. I apologize for this mistake." (*Id.*). Kane requested that Seymore provide an accounting of the days on which he arrived early in order to compensate him for that time. (*Id.*). Seymore did not provide such an accounting and was not compensated for any extra time. (Def. SMF ¶ 24).

### B. Procedural Background

Seymore filed this lawsuit on May 30, 2014, alleging seven counts arising under state and federal law. On March 26, 2015, defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted. The Court granted that motion with respect to Counts One, Three, Six, and Seven, and otherwise denied it. The remaining counts allege claims for retaliation in violation of Title VII, breach of contract, and breach of the implied covenant of good faith and fair dealing.

## II. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence,

viewed in the light most flattering to the nonmovant would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

### III. <u>Analysis</u>

#### A. <u>Count Two: Retaliation</u>

Title VII makes it an unlawful act for an employer to discriminate against any employee "because he has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). In order to prove a *prima facie* case of retaliation, plaintiff must establish three elements: (1) that he engaged in a protected activity; (2) that he suffered a materially adverse action, causing him harm either inside or outside of the workplace; and (3) that the adverse action was causally linked to the protected activity. *See Mariani-Colon v. Department of Homeland Sec.*, 511 F.3d 216, 223 (1st Cir. 2007) (citing *Dixon v. International Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007)).

Defendant contends that plaintiff has not established a *prima facie* case of retaliation because he has not produced evidence that the leave restriction constituted a materially adverse action. A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*,

4

548 U.S. 53, 68 (2006) (quotation omitted). Requiring a plaintiff to prove that element serves to "separate significant from trivial harms." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013) (quoting *Burlington N.*, 548 U.S. at 68).

The memorandum describing the leave restriction plainly provided that plaintiff was required to arrive at work thirty minutes prior to his scheduled start time and be "ready to work" at that time. Without question, requiring an employee to work an extra thirty minutes each day without pay rises above the level of a "minor annoyance[]." *Id.* Defendant contends that the restriction cannot constitute an adverse action because it was the unintentional result of a typographical error that was remedied immediately upon its discovery. Plaintiff disputes that contention, arguing that the structure of the memorandum—which juxtaposes his start time of 12:15 with the early arrival time of 11:45 within the same paragraph—renders defendant's explanation implausible. Drawing all inferences in the light most favorable to plaintiff, a reasonable juror could find that the memorandum was written as intended and constituted an adverse employment action. That factual dispute precludes summary judgment. Accordingly, defendant's motion for summary judgment will be denied with respect to Count Two.

> **B.   Counts Four and Five: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Counts Four and Five allege claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendant moved for summary judgment on those claims on the basis that plaintiff's employment was initiated by governmental appointment, rather than by contract. Plaintiff did not address defendant's arguments concerning those claims in opposing the motion for summary judgment. Accordingly, as defendant's arguments appear meritorious, the Court will grant the motion for summary judgment with respect to Counts Four and Five.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED as to Counts Four and Five, alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and DENIED as to Count Two, alleging a claim for retaliation under Title VII.

**So Ordered.**

|  |  |
|---|---|
| Dated: February 22, 2017 | /s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge |